Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| SERGIO R. MALDONADO ORTEGA<br>**Recurrente**<br><br>Vs.<br><br>JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO; SISTEMA DE RETIRO PARA MAESTROS; ÁREA DE SERVICIOS DE RETIRO<br>**Recurrida** | KLRA202400221 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Retiro del Gobierno de P.R.<br><br>Querella Núm. 2022-0060<br><br>SOBRE:<br>Reclamación de Compra de Tiempo y Revisión, Error en el Cálculo y Ajuste de la Pensión de Retiro y Pago de Retroactivo al 10 de junio de 2022 |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2024.

El 29 de abril de 2024, el Sr. Sergio R. Maldonado Ortega (señor Maldonado o recurrente) compareció ante nos mediante una *Revisión Judicial* y solicitó la revisión de una *Resolución* que se dictó el 28 de febrero de 2024 y se notificó el 4 de marzo de 2024 por la Junta de Retiro del Gobierno de Puerto Rico (la Junta). Mediante el aludido dictamen, la Junta determinó que el señor Maldonado cotizó 29 años, 3 meses, 2 semanas, 0 días, 2:24 horas de servicios por lo cual no completó los treinta (30) años cotizados que requiere el Art. 4.4 de la Ley Núm. 160-2013, según enmendada, también conocida como *Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico*, 18 LPRA sec. 396c (Ley Núm. 160-2013) para jubilarse con el requisito de los treinta (30) años y el 75% de los últimos treinta y seis (36) salarios devengados. Explicó que ello se debió a que el cuadre de aportaciones se computó hasta el 14 de

marzo de 2022, habiendo entrado en vigor el Plan de Ajuste de la Deuda el 15 de marzo de 2022.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

I.

El 6 de junio de 2023, el señor Maldonado presentó ante el Área de Servicios de Retiro de la Junta una *Reclamación Aplicación de Compra de Tiempo y Revisión en el Cálculo de la Pensión de Retiro y Pago Retroactivo al 10 de junio de 2022*.[1] En esta, manifestó que trabajó en el Departamento de Educación desde el 30 de septiembre de 1993 hasta su retiro efectivo el 10 de junio de 2022. Expresó que presentó una solicitud para acogerse al retiro en la cual solicitó que la pensión fuese calculada a base de años por servicios y edad. Además, sostuvo que de la referida solicitud surgía que éste se acogió a las disposiciones del Art. 2.11 de la Ley Núm. 26-2017, según enmendada, también conocida como *Ley de Cumplimiento con el Plan Fiscal*, 3 LPRA sec. 9481 (Ley Núm. 26-2017) con el fin de completar el beneficio con la cantidad máxima según balances de vacaciones. Alegó que, a tales efectos, presentó una *Solicitud de Compra de Tiempo* y que esta se reevaluó mediante una "Reevaluación por Monto Aprobado".

Por otro lado, alegó que, a pesar de haber presentado la reclamación sobre la compra de tiempo, la certificación que emitió la Junta el 24 de mayo de 2022 no reflejaba la acumulación de años de servicio. Adujo que ello se desprendía de la certificación del Departamento de Educación que se emitió ese mismo día. Indicó que la referida certificación citaba que éste había prestado servicios para el Departamento de Educación por 28 años, 8 meses, 2 semanas y 2 días y que, por ende, no se reflejaba la aplicación del tiempo

---

[1] Véase, págs. 1-2 del apéndice del recurso.

comprado completando los 30 años de servicio según fue solicitado en la solicitud de retiro. Señaló que ello provocó que recibiera una pensión menor a la que presuntamente tenía derecho devengando $3,611.67 mensuales por los últimos treinta y seis (36) meses, debiendo recibir el 75% de dicha cantidad que totalizarían $2,708.75 mensual. Así pues, puntualizó que solo recibía $1,904.14 mensuales, por lo que se le debía $804.61 mensual desde el 10 de junio del 2022.

En virtud de lo antes expuesto, solicitó que se le aplicara el tiempo comprado completando los treinta (30) años de servicio y se revisara el cálculo de la pensión de retiro concediéndole el 75% en lo sucesivo y según el salario más alto devengado, por la cantidad de $2,708.75 mensual y la cantidad de $9,655.32 de retroactivo al 10 de junio de 2022.

Así las cosas, el 13 de junio de 2023, la Junta emitió una respuesta a la reclamación del señor Maldonado.[2] En primer lugar, sostuvo que el tiempo cotizado por el recurrente era de 29 años, 3 meses, 2 semanas, 0 días y 2:24 horas. Añadió que, el tiempo de la compra de la licencia de vacaciones fue considerado en el cómputo de pensión efectivo el 11 de junio de 2022 por $1,904.14. Asimismo, indicó que el pago del retroactivo se computó desde el 11 de junio de 2022 al 15 de julio de 2022 por $2,221.49. En virtud de ello, concluyó que el señor Maldonado no había cumplido los 30 años de servicio que requería la Ley Núm. 160-2013, *supra*, que le permitía retirarse con el requisito de 30 años de servicio y el 75% de los últimos 36 salarios devengados.

Explicó que lo antes expuesto se debió a que el cuadre de aportaciones se computó hasta el 14 de marzo de 2022, fecha en que quedaron congeladas las aportaciones del Sistema de Retiro

---

[2] Íd., págs. 11-12.

para Maestros, mediante la orden de la jueza a cargo de la implantación del Plan de Ajuste de la Deuda de Puerto Rico. Expresó que ahora los participantes cotizaban bajo un plan de aportaciones definidas y no así bajo el plan de beneficios definido. Finalmente, aclaró que los años de experiencia laboral no eran iguales a los años cotizados. Explicó que el tiempo cotizado era lo que tanto el empleado como el patrono le pagó al sistema de retiro para recibir la pensión. Planteó que, por esta razón, las certificaciones recibidas por el participante contenían diferencias en tiempo.

Inconforme con esta respuesta, el 3 de julio de 2023, el recurrente presentó una reconsideración.[3] En síntesis, argumentó que la Solicitud de Retiro se presentó cuatro (4) meses antes de la Orden de Congelación de las Aportaciones y la Solicitud de Compra de Tiempo se presentó un mes antes de la referida Orden por lo que no se le podía aplicar retroactivamente. Razonó que por esa razón su Solicitud de Retiro se debía trabajar bajo la aplicación del Plan de Beneficios Definidos. Manifestó que además se le había orientado que con la compra de tiempo completaba los 30 años de servicios y que inclusive recibió el sobrante de dicha compra de tiempo luego de cubrirlo. De este modo, solicitó lo mismo que en su reclamación del 6 de junio de 2023.

La Junta no contestó la reconsideración y, por ende, el 14 de julio de 2023, el recurrente presentó un *Escrito de Apelación* ante la Junta.[4] En esta, impugnó la determinación que emitió la Junta el 13 de junio de 2023, denegando su reclamación del 6 de junio de 2023. Para fundamentar su postura, reiteró los mismos argumentos que presentó en sus escritos anteriores. Así pues, solicitó que se declarara Con Lugar la Apelación y que, en consecuencia, se le aplicara el tiempo comprado completando los treinta (30) años de

---

[3] Íd., págs. 16-17.
[4] Íd., págs. 18-26.

servicio y se revisara el cálculo de la pensión de retiro concediendo el 75% en lo sucesivo y según el salario más alto devengado, por la cantidad de $2,708.75 mensual y la cantidad de $9,655.32 de retroactivo al 10 de junio de 2022.

El 7 de agosto de 2023, la parte recurrida presentó una *Contestación a Apelación.*[5] En primer lugar, puntualizó que el 18 de enero de 2022, la jueza Laura Taylor Swain, quien presidió el caso de reestructuración de la deuda bajo el Titulo III de la Ley Federal de PROMESA, aprobó el octavo Plan de ajuste enmendado que formuló la Junta de Control Fiscal para el gobierno de Puerto Rico. Especificó que este Plan de Ajuste de Deuda se confirmó mediante un documento intitulado *Confirmation Order* y en este se fijó como fecha de efectividad del Plan de Ajuste el 15 de marzo de 2022. En lo pertinente, citó el párrafo 55.9 del referido documento en el cual se dispuso sobre el tratamiento que se le daría al plan de pensiones del Sistema de Retiro para Maestro. Adujo que en el Exhibit F-2 al cual se le hizo referencia en el precitado párrafo citado, se realizó un resumen de las modificaciones con respecto al congelamiento de los beneficios de pensión acumulados bajo el plan de retiro del Sistema de Retiro para Maestros. En cuanto a ello, afirmó que la acumulación de beneficios del plan de retiro para maestros se congeló a partir de la fecha de efectividad del Plan de Ajuste de la Deuda, aplicando a toda su matrícula independientemente de su título o clasificación laboral.

Cónsono a lo anterior, expresó que el Plan de Ajuste de Deuda era claro en cuanto a que la fecha límite para poder acreditar los pagos por servicios no cotizados era antes de la fecha de efectividad del Plan de Ajuste, es decir, el 15 de marzo de 2022. Dicho lo anterior, planteó que, en el presente caso, el señor Maldonado le

---

[5] Íd., págs. 52-59.

solicitó al Departamento de Educación utilizar los balances de licencia de vacaciones para cotizar como tiempo trabajado y el oficia de nóminas de este Departamento, certificó que el valor monetario de licencia de vacaciones al 10 de junio de 2022 era de $7,223.34. Por lo tanto, sostuvo que tomando en consideración que el sueldo del empleado era de $3,611.67 y que el costo mensual de aportación de retiro basado en el sueldo del empleado era de $325.05, se computó que balance disponible acumulado por licencia de vacaciones era equivalente a 1 año y 10 meses. Afirmó que cuando esto se sumaba a los 27 años, 3 meses y 2 semanas cotizadas, ello daba a un total de tiempo cotizado de 29 años, 3 meses y 2 semanas. Así pues, concluyó nuevamente que el recurrente no completó los 30 años de servicio cotizados.

Posteriormente, el 25 de enero de 2024, se celebró una vista administrativa en la cual las partes presentaron sus argumentos y su prueba testifical y documental. Habiendo evaluado las posturas de las partes y la totalidad del expediente, el 28 de febrero de 2024, la Junta dictó una *Resolución* que se notificó el 4 de marzo de 2024. En primer lugar, realizó las siguientes determinaciones de hechos:

1. Sergio R. Maldonado Ortega, nació el 3 de febrero de 1962, actualmente cuenta con 62 años de edad. Laboró en el servicio público en el Departamento de Educación y fungió como maestro de Bellas Artes. El Sr. Maldonado Ortega ingresó al Sistema de Retiro en el año de 30 de septiembre de 1993.

2. El 12 de octubre de 2021, la Parte Apelante, completó una Solicitud de Retiro por años de servicios y edad con fecha de efectividad al 10 de junio de 2022. En la cual se acogió a las disposiciones del Art. 2.11 de la Ley Núm. 26 de 29 de abril de 2017, conocida como "Ley de Cumplimiento con el Plan Fiscal" con el fin de completar el beneficio con la cantidad máxima según balances de vacaciones.

3. El 11 de febrero de 2022 el Sr. Maldonado Ortega presentó una Solicitud de Compra de Tiempo con número de reclamación REC-CT-2022-00081.

4. El 6 de junio de 2023, la Parte Apelante, por medio de su representación legal la Lcda. Edna M. Rodríguez Ramos curso misiva a la Junta de Retiro titulada:

"Reclamación Aplicación de Tiempo y Revisión en el Cálculo de la Pensión de Retiro y Pago Retroactivo al 10 de junio de 2022". En la misma planteó que:

[…]

[L]a certificación de la Junta de Retiro del Gobierno de Puerto Rico de fecha del 24 de mayo de 2022, **no refleja la acumulación de años de servicio, según surge de la certificación del Departamento de Educación de a misma fecha, en la cual se cita que el Sr. Maldonado ha prestado servicios para el Departamento de Educación por 28 años, 8 meses, 2 semanas y 2 días, anejo certificaciones.** Por otro lado, amabas certificaciones no reflejan la aplicación del Tiempo Comprado completando los 30 años de servicio, según fuera solicitado por el Sr. Maldonado, esto afectando la cantidad de pensión que recibe este sea menor a la que tiene derecho, habiendo devengado $3,611.67 mensuales por los últimos 36 meses, debiendo recibir el 75% de dicha cantidad, que totalizarían $2,708.75 mensual. Al día de hoy, el Sr. Maldonado solo recibe $1,904.14 mensuales, por lo que se le debe a este $804.61 mensual desde 10 de junio del 2022, anejo talonario.

**Expuesto lo anterior, solicitamos, que se aplique el tiempo comprado por el Sr. Maldonado, completando los 30 años de servicio y se revise el cálculo de la pensión de retiro concediendo el 75% en lo sucesivo y según el salario más alto devengado, por la cantidad de $2,708.75 mensual y la cantidad de $9,655.32 de retroactivo al 10 de junio de 2022, fecha de efectividad de retiro.**

[…]

(Énfasis suplido).

5. La Junta de Retiro envió misiva con fecha del 133 de junio de 2023 y firmada por la Sra. Ileana Ramos Reyes, Directora de Servicios de Retiro. En la misma esbozó que:

[…]

Evaluamos el expediente del Sr. Sergio R. Maldonado Ortega, jubilado del Sistema de Retiro para Maestros, conforme la reclamación recibida en a la carta del 6 de junio de 2023 que Usted nos remitió.

En la misma solicitan la aplicación de compra de tiempo y revisión en el cálculo de la pensión de retiro y el pago retroactivo al 10 de junio de 2022. Al evaluar el expediente, certificamos que el tiempo cotizado por el señor Maldonado Ortega es:

| Tiempo Cotizado | Años | Meses | Semanas | Días | Horas |
|---|---|---|---|---|---|
| Balance al 4/marzo/2022 | 27 | 5 | 2 | 0 | 2:24 |
| Balance de la Compra de Licencia de Vacaciones | 1 | 10 | | | |
| Balance para Cómputo de Pensión | 29 | 3 | 2 | 0 | 2:24 |

El tiempo de la compra de licencia de vacaciones fue considerado en el cómputo de pensión efectivo el 11 de junio de 2022 por $1,904.14. El pago del retroactivo se computó desde el 11 de junio de 2022 al 15 de julio de 2022 por $2,221.49.

El profesor no completó los 30 años de servicios requeridos por la Ley 160-2013, que e permite jubilarse con el requisito de 30 años de servicio y el 75% de los últimos 36 salarios devengados, porque el cuadre de aportaciones se computó hasta el 14 de marzo de 2022.

En esta fecha (14 de marzo de 2022) **quedaron congeladas las aportaciones del Sistema de Retiro para Maestros, mediante la orden de la Honorable Laura Taylor Swain, Jueza a cargo de la implantación del Plan de Ajuste de la Deuda de PR. Antes de esta congelación, los participantes cotizaban bajo un Plan de Beneficios Definidos.**

Ahora cotizan bajo un Plan de Aportaciones Definidas.

**Además, le aclaramos que los años de experiencia laboral no son iguales a los años cotizados. El tiempo cotizado es lo que, tanto el empleado como el patrono, pagó al sistema de retiro para poder recibir una pensión. Por esta razón, las certificaciones recibidas por el participante contienen diferencias en tiempo.**

De usted no estar de acuerdo con esta determinación, puede presentar un escrito de Reconsideración dentro del término de veinte (20) días ante el Director Ejecutivo; o puede presentar un escrito de Apelación ante la Secretaría de la Junta de Retiro en el término de treinta (30) días desde la notificación de la determinación. A esos efectos, incluyo el Pliego de Advertencias y Reglas Generales que aplican para las Solicitudes de Reconsideración o Apelación. (Énfasis suplido).

6. Así las cosas, el 3 de julio de 2023, la Parte Apelante envió misiva dirigida a la Sra. lleana Ramos Reyes, Directora de Servicios de Retiro, la cual tiene como asunto: "RECLAMACIÓN APLICACIÓN DE TIEMPO Y REVISIÓN EN EL CÁLCULO DE LA PENSIÓN DE

RETIRO Y PAGO RETROACTIVO AL 10 DE JUNIO DE 2022". Dicha carta plantea nuevamente los argumentos versados en la misiva fechada al 6 de junio de 2023.

7. El 3 de julio de 2023, la Parte Apelante presentó al Sistema de Retiro Escrito de Reconsideración de la determinación emitida el 13 de junio de 2023. En la cual alegó, que no procedía la aplicación retroactiva del Plan de Ajuste de la Deuda. La misma no fue atendida.

8. El 5 de julio de 2023, la Parte Apelante envió carta dirigida al Lcdo. Luis M. Collazo Rodríguez Director Ejecutivo de la Junta de Retiro del Gobierno de Puerto Rico. En la misma planteó los mismos argumentos versado en la correspondencia remitida a la Sra. Ileana Ramos Reyes, Directora de Servicios de Retiro. La cual no fue atendida.

9. Finalmente, la Parte Apelante presentó Escrito de Apelación con fecha y ponche del 14 de julio de 2023, en la Oficina de Asuntos Adjudicativos de la Junta de Retiro del Gobierno de Puerto Rico.

10. El 2 de agosto de 2023, la Lcda. Raquel Sosa Gierbolini, emitió Orden a la Parte Apelada en la que ordenó [...] "que dentro de un término de veinte (20) días, presente contestación a la apelación presentada por la Parte apelante el 14 de julio de 2023".

11. El 8 de agosto de 2023, la Parte Apelada presentó en la Oficina de Asuntos Adjudicativos "CONTESTACIÓN A APELACIÓN".

12. El 18 de agosto de 2023, la Parte Apelante presentó "MOCIÓN INFORMATIVA SOBRE DESCUBRIMIENTO DE PRUEBA".

13. El 18 de agosto de 2023, la Parte Apelada, remitió Interrogatorio mediante escrito titulado "PRODUCCIÓN DE DOCUMENTOS" dirigido a la Parte Apelada.

14. Así las cosas, 30 de agosto de 2023, la Parte Apelada presentó "MOCIÓN EN SOLICITUD DE ORDEN SOBRE DESCUBRIMIENTO DE PRUEBA".

15. El 31 de agosto de 2023, la Lcda. Sosa Gierbolini emitió Orden con relación a la moción "PRODUCCIÓN DE DOCUMENTOS" la cual fue declarada "HA LUGAR".

16. En la misma fecha la Lcda. Sosa Gierbolini emitió Orden "HA LUGAR" a "MOCIÓN EN SOLICITUD DE ORDEN SOBRE DESCUBRIMIENTO DE PRUEBA".

17. El 13 de septiembre de 2023, la Parte Apelante presentó "MOCIÓN INFORMATIVA".

18. El 31 de agosto de 2023, la Oficina de Asuntos Adjudicativos emitió Orden bajo la firma de la Leda. Sosa Gierbolini en la que señaló Conferencia con Antelación a Vista para el 21 de septiembre de 2023 a la 1:30 P.M.

19. El 21 de septiembre de 2023, se celebró Conferencia con Antelación a Vista, la cual fue dirigida por la Lcda. Andrea N. Mercado Egipciaco. A la misma, se presentó la Parte Apelante acompañado de su representación legal la Leda. Edna Rodríguez. Por su parte, la Parte Apelada, la Junta de Retito, fue representada por el Lcdo. Luis Soto Mieses. En dicha Conferencia y según surge del Acta se determinaron las controversias, además de Orden Verbal para que la Junta de Retiro en un término de quince (15) días presentara certificación actualizada de aportaciones acumuladas.

20. El 21 de septiembre de 2023, la Parte Apelada presentó "MOCIÓN INFORMATIVA PARA STATUS CONFERENCE".

21. El 23 de septiembre de 2023, la Lcda. Raquel Sosa Gierbolini emitió Orden señalando el 27 de octubre de 2023, como fecha para la celebración de la Vista Administrativa en sus méritos.

22. El 26 de septiembre de 2023, la Parte Apelada presentó "MOCIÓN EN CUMPLIMIENTO DE ORDEN" con la cual anejó según ordenado en la Conferencia con Antelación a Vista, certificación de tiempo.

23. El 27 de septiembre de 2023, la Parte Apelada radicó "MOCIÓN SOLICITANDO ORDEN CITACIÓN DE TESTIGO", en la misma se solicitó la citación de la Sra. Ileana Ramos Reyes, Directora de Servicios de Retiro o a su representante autorizado, para que comparezca como testigo a la Vista Administrativa en sus méritos.

24. El 5 de octubre de 2023, la Parte Apelante presentó ante la Oficina de Asuntos Adjudicativos "MOCIÓN INFORMANDO PRUEBA ADICIONAL A LA PRESENTADA EN APELACIÓN". La misma se acompañó con los siguientes anejos:

   a. Certificación Junta de Retiro del Gobierno de Puerto Rico del 2 de noviembre de 2021 ponchada.

   b. Hoja de Cómputos del Sistema de Retiro para Maestros del 2 de noviembre de 2021.

   c. Factura al Cobro con Núm.20230000000413 ponchada de la Junta de Retiro del Gobierno de Puerto Rico.

    d. Solicitud para actualizar los Balances de Licencia de Vacaciones para cotizar como Tiempo Trabajado del 11 de febrero de 2022.

25. El 11 de octubre de 2023, la Lcda. Andrea N. Mercado Egipciaco, expidió Orden a la Parte Apelada. En la misma ordenó "[...] que dentro un término de diez (10) días presente por escrito, su posición ante la Moción Informando Prueba Adicional a la presentada en Apelación, presentada el 5 de octubre de 2021, por la Parte Apelante".

26. En la misma fecha, la Lcda. Andrea N. Mercado Egipciaco, expidió Orden a la Parte Apelada. En la misma ordenó "[...] que dentro de un término de diez (10) días presente por escrito, su posición ante la Moción Solicitando Orden de Citación de Testigo, presentada el 27 de septiembre de 2023, por la parte Apelante.

27. El 13 de octubre de 2023, la Parte Apelada presentó "MOCIÓN EN CUMPLIMIENTO DE ORDEN" en la misma expresó:

[...]

En cumplimiento de la Orden informamos que, luego de evaluar la documentación presentada, tenemos reparo en su admisibilidad toda vez que ya es evidencia que surge del expediente administrativo, por lo que resulta ser repetitiva.

[...]

28. En la misma fecha la Parte Apelante presentó "MOCIÓN EN CUMPLIMIENTO DE ORDEN" concerniente a la solicitud de citación de testigo por la Parte Apelante. En lo referente la Parte Apelada expresó:

[...]

En cumplimiento de la Orden informamos que, luego de evaluar la Moción, tenemos reparo con la solicitud presentada, toda vez que no se expresa en forma detallada sobre qué asuntos interesa que testifique la Sra. Ileana Ramos Reyes o su representante, y calidad de qué estaría citándosele.

[...]

29. Así las cosas, el 18 de octubre de 2023, la Parte Apelada presentó "MOCIÓN EN OPOSICIÓN A MOCIÓN EN CUMPLIMIENTO DE ORDEN DEL 13 DE OCTUBRE

DE 2023 PRESENTADA POR LA PARTE APELADA". En la misma la Parte Apelada expresó:

[...]

El pasado 21 de septiembre de 2023, se celebró Conferencia con Antelación a Vista, donde el Oficial Examinador advirtió a la Parte Apelante, que la citación de testigo se hará conforme al Reglamento 7053 [.] nos remitimos al "r[é]cord" de dicha vista [...].

[...]

30. El 26 de octubre de 2023, la Lcda. Andrea N. Mercado Egipciaco expidió Orden declarando "NO HA LUGAR la "MOCIÓN SOLICITANDO ORDEN CITACIÓN DE TESTIGO" presentada por la Parte Apelante. La Oficial Examinadora, sustentó su decisión en que la misma no fue presentada conforme a derecho según lo dispuesto en el Reglamento Núm. 7053-2005 Sec. 15.

31. En la misma fecha, la Lcda. Andrea N. Mercado Egipciaco expidió Orden declarando "NO HA LUGAR' la "MOCIÓN INFORMANDO PRUEBA ADICIONAL A LA PRESENTADA EN APELACIÓN".

32. Así las cosas, el 27 de octubre de 2023, fecha señalada para la celebración de la Vista Administrativa en sus méritos y habiéndose presentado ambas partes con sus respectivas representaciones legales. Al comenzar la Vista, la Lcda. Edna Rodriguez solicitó transferencia de vista para fecha posterior con el propósito de presentar su moción para presentar testigos conforme a derecho" dicha solicitud fue declarada en sala "HA LUGAR", según surge del acta que forma parte del expediente.

33. En esa misma fecha la Lcda. Andrea N. Mercado Egipcíaco, expidió Orden Escrita declarando "HA LUGAR' la solicitud en sala de la Parte Apelante referente a la transferencia de vista y presentación de Moción solicitando citación de testigo.

34. El 2 de noviembre de 2023, la Parte Apelante presentó "MOCION SOLICITANDO CITACIÓN DE TESTIGO".

35. El 6 de noviembre de 2023, la Oficina de Asuntos Adjudicativos expidió Orden señalando Vista Administrativa el 26 de enero de 2024 a las 2:15 p.m.

36. El 20 de diciembre de 2023, la Lcda. Ginnell Torres Adrover Oficial Examinadora a quien se le designó el caso expidió Orden a la Parte Apelada. En la misma ordenó a la Parte Apelada a presentar su posición en un término de diez (10) días en cuanto a la "MOCIÓN

SOLICITANDO CITACIÓN DE TESTIGO" presentada por la Parte Apelante el 2 de noviembre de 2023.

37. El 8 de enero de 2024, transcurrido el término provisto a la Parte Apelada para que expresara su posición respecto a la "MOCIÓN SOLICITANDO CITACIÓN DE TESTIGO" presentada por la Parte Apelante, y no habiendo recibido la misma, la Lcda. Ginnell Torres Adrover expidió Orden declarando "HA LUGAR" la moción en cuestión.

38. En la misma fecha se envió citación de testigo a la Sra. lleana Ramos Reyes quien debía comparecer a la Vista Administrativa la cual sería celebrada el 26 de enero de 2024 a las 2:15 p.m.

39. La Vista Administrativa fue celebrada el 25 de enero de 2024, presidida por la Lcda. Ginnell Torres Adrover. La Parte Apelada compareció representada por el Lodo. Luis Soto Mieses y la Parte Apelante el Sr. Sergio R. Maldonado Ortega, quien asistió con su representación legal, la Lcda. Edna Rodriguez. El testimonio vertido en el salón de audiencias por la Parte Apelante fue el siguiente:

Teoría del Caso Parte Apelante:

"En el día de hoy nosotros solicitamos la citación del testigo de la unidad de Sistema de Retiro. Nosotros estamos planteando que hay unas incongruencias en el expediente, hay una solicitud de retiro, una solicitud de compra de tiempo que está en controversia. En el día de hoy queríamos presentar al testimonio de la Sra. Ramos. Para efectos del registro tengo a la Parte Apelante el Sr. Sergio R. Maldonado a quien se le harán varias preguntas y luego se hará pasar a la Sra. Ramos."

La Parte Apelada no presentó teoría del caso.

Interrogatorio Directo Parte Apelante:

"Que su nombre completo es Sergio Ricardo Maldonado Ortega. Que actualmente no trabaja. Que trabajó para el Departamento de Educación del Gobierno de Puerto Rico, desde el año 1993. Que solicito su retiro para 12 de octubre de 2021. Que en esa solicitud de retiro además solicito el beneficio de la ley que estaba vigente que me protegía, que podía comprar con el dinero de las vacaciones lo que me faltaba para cumplir los 30 años. En ese momento yo solicité y se hicieron los tramites de la compra de tiempo. Que una vez me retire no recibi ninguna notificación a los efectos de que mi tiempo no había sido completado por la compra de tiempo o que había sido paralizado por algún tipo de orden del

tribunal. Cuando comencé a cobrar yo estaba cobrando una suma que yo pensaba que era el retroactivo, luego empiezo a cobra $923 dólares entonces vengo a Retiro a preguntar por qué, entonces me dicen que no yo me acogí a una Ley. Que en todo momento del trámite yo me oriente tanto en Retiro como en Educación de que, si todo estaba bien, para retirarme con el 75%. Que nunca recibí, ni se contestó por escrito lo que había sucedido de retiro"

Contra Interrogatorio:

"Por nuestra parte no tenemos preguntas para el Sr. Maldonado"

Interrogatorio Directo Testigo Sra. Ileana Ramos Reyes:

"Que de la solicitud se desprende que la fecha fue radicada el 12 de octubre de 2021. Que Surge de la solicitud que el tipo de solitud se hizo por años de servicio y edad. Que en la solicitud está marcada la compra de tiempo, solicitando la cantidad máxima según el balance de vacaciones. El proceso que se sigue cuando se recibe una solicitud de maestro, el maestro radica online la solicitud de retiro, para este tiempo existía lo que era la compra de tiempo y el maestro marcaba, verdad, a lo que él tenía entendido podía completar el tiempo para una pensión. En el caso de Sergio el marcó la cantidad máxima según el balance total de sus vacaciones. Esta compra de tiempo, Retiro no tiene el control de saber que tiempo de vacaciones que tiene el maestro, obviamente, el Departamento de Educación es el que nos dice a nosotros los días acumulados que tiene el maestro, luego de que se radica aquí la solicitud llega al área de retiro y se preparaba una certificación de años de servicios, esa certificación de años de servicios se enviaba tanto una copia al maestro, y se enviaba también al Departamento de Educación. En el caso de los maestros que se retiran en junio y julio, Retiro tiene hasta el 31 de marzo para contestar todas las peticiones de los maestros hacer enviadas al Departamento de Educación. Con relación a la certificación del 9 de noviembre de 2021, surge que el área de Retiro certificó el tiempo cotizado hasta la última fecha de la nómina que teníamos en ese momento en el sistema. El tiempo certificado es de 27 años 2 semanas y 40 días. Nosotros certificamos tiempo cotizado, la compra de tiempo que es la acumulación de vacaciones eso lo determino el patrono. Nosotros cuando el maestro radica la solicitud de Retiro, que hice entonces, la intención de hacer comprar de tiempo, esto llegaba también bien al Departamento de Educación. El Departamento nos enviaba un documento y nos decía

"el maestro tiene tanta cantidad de días acumulados". En Retiro convertíamos esos días en tiempo cotizado, y le decíamos a Educación entonces "este es el valor monetario". Luego de que ese documento se enviaba, entonces Educación hacia el acercamiento con el maestro, verdad tanto el patrono con el empleado, ahí el maestro determinaba si se acogía o no a esa pensión. Buena, la fecha de cuando se envió la evaluación final al Departamento de Educación no obra en el expediente, eso se envía por correo electrónico a ciertas personas que están ya determinadas en el Departamento de Educación y ese correo electrónico, no sabemos cuándo terminó la evaluación del Sr. Maldonado."

"Se le entregó a la Sra. Ramos la certificación que expide Retiro con fecha del 24 de mayo de 2022."

Sra. Ramos Reyes:

"Surge de esta certificación que están certificando el tiempo a la última nomina entiendo que es igual a la del 9 de noviembre del 2021, en este caso entiendo que imprimieron la que ya estaba, la certificación viene con la solicitud, es decir que no actualizaron el tiempo que el Sr. Sergio Maldonado acumulo de una certificación a la otra, pero si se fija la última nomina es 2021, no cambia la fecha de la nómina."

"La Licenciada de la Parte Apelante se refiere a la Certificación del Departamento de Educación del 24 de mayo de 2022 la cual tiene la misma fecha, la Sra. Ramos Reyes, esta certificación que la expide el Departamento de Educación y certifica los servicios prestados por el Sr. Maldonado, los servicios prestados, es decir servicios trabajados, certifica 28 años, 8 meses, 2 semanas, 2días. No surge del expediente ninguna notificación al Sr. Maldonado de la orden emitida por la Juez del 14 de marzo de 2022 en cuanto a la paralización de las aportaciones o cualquier información y del efecto como que se le oriento al Sr. Maldonado. Cuando implantan el plan de ajuste de la deuda al Sistema de Retiro de Maestros el Departamento de Educación oriento, verdad a su personal que es el patrono, pero a mí no me consta que orientaron al Sr. Maldonado. En el caso de Retiro aquel maestro venia si había alguna duda se le explicaba, si, verdad, se le daba la orientación, fueron días de muchas dudas, de verdad esto afecto a muchos maestros, pero si venían aquí se le orientaba, se le explican los pro y los contras, como se afectaban, lo que frisaba al 14 de marzo, y los beneficios que pudieron haber perdido. Con

relación al Sr. Maldonado no tengo evidencia de que se le oriento, desconozco si algún día vino a sala."

"Se hace distinción que lo que dice la certificación de Retira y la del Departamento de Educación es distinta, la Sra. Ileana Ramos Reyes afirma que es distinto."

"Los maestros que solicitaron el Retiro antes del 31 de enero tenían hasta el 14 de marzo para solicitar a su patrono que en este caso es el Departamento de Educación, solicitar la compra de tiempo. Retiro preparo la certificación, Retiro solo le indica al patrono si cualifica o no cualifica en esa certificación. Cuando hacen la compra de tiempo, que Educación nos envía la solicitud de compra de tiempo, nosotros convertimos el balance en tiempo cotizado, eso indica a educación el valor monetario, según el proceso del Departamento, no sé si Educación lo llego hacer con el maestro, Educación orienta al maestro y si el maestro está de acuerdo con la pensión que cualifica, y la pensión aproximada que será emitida si hay una renuncia final, entonces el maestro firmaba la solicitud de compra de tiempo. Siempre es emitida por el Departamento de Educación."

Lcda. Rodriguez:

"Aclara que está claro con el proceso. Lo que, si es que esta aplicabilidad de la orden de la Juez fue aplicada luego de que el Sr. Maldonado hiciera todas las gestiones, solicitud de compra de tiempo, bajo que premisa, ustedes aplican la Orden de paralización a solicitudes y procesos que ya fueron evaluado."

Sra. Ramos Reyes:

"Bueno, entre los acuerdos de la Junta y el Gobierno que los maestros que solicitaron retiro en o antes del 31 de enero de 2022, estos maestro tenían derecho, se le iba a otorgar la compra de tiempo, el Sistema de Retiro si, como ya sabemos se impactó por el plan de ajustes 14 de marzo, estos maestro se le trabajaron, estos maestros que solicitaron retiro se le hizo todo al cuadre del 14 de marzo de 2022, porque a partir del 15 de marzo de 2022, ya no hay, verdad, todos pasamos a un plan de 401K Gubernamental, todos los participantes de maestros cotizaron hasta el 14 de marzo de 2022, hasta ahí era el cuadre."

"fueron acuerdos establecidos entre la Junta de Supervisión Fiscal y el Gobierno, no sé de donde surgen esos acuerdos, y no sé de dónde surge que fueran retroactivamente. La solicitud fue evaluada lo que no surge del expediente es el correo electrónico de cuando

fue enviada al Departamento de Educación, pero esto sale del sistema, la fecha de cuando fue enviada al Departamento de Educación, esa sí que no está en el expediente."

"Esto es parte del Plan de Ajuste de la deuda, el término o el Artículo no lo tengo aquí, pero fue parte de la implementación del plan de ajuste de la deuda en el Sistema de Retiro para Maestros."

Parte Apelada no tenía preguntas a la Testigo la Sra. Ileana Ramos Reyes.

Informe Final Parte Apelante:

"Bueno, aquí en este expediente hubo una solicitud de Retiro el 12 de octubre de 2021 con una solicitud para acogerse al Artículo 2.11 de la Ley 26 del 29 de abril de 2007. La misma fue evaluada con anterioridad a la congelación de la orden del 14 de marzo de 2022, y fue aplicada esa congelación de forma retroactiva y no es conforme a derecho. Hay varias incongruencias en el expediente, surge de una certificación del noviembre del 2021, que el Sr. Maldonado según la Junta de Retiro acumulo 27 año, 0 meses 2 semanas 40 día. Así, también el Sistema de Retiro el 24 de mayo del 2022 hace una certificación sin actualizar el periodo cotizado del Sr. Maldonado. Citamos que, en una misma fecha el 24 de mayo de 2022, en una Certificación del Departamento de Educación el Sr. Maldonado había cumplido 28 años, 8 meses, 2 semanas y 2 días, ninguna de estas certificaciones esta actualizada con la compra de tiempo que procede y que así la testigo ha dicho que se permitió a las solicitudes de Retiro hasta el 31 de enero de 2021, no fueran actualizadas a la compra de tiempo, eso fue en perjuicio del Sr. Maldonado. Además, no surge del expediente que se haya hecho una notificación en cuanto a la congelación de las pensiones y del impacto que podía tener en la pensión de retiro del Sr. Maldonado, En ese sentido estaríamos solicitando que se declare a lugar la apelación y que se conceda retroactivamente la pensión conforme a los 30 años de servicios, incluyendo la compra de tiempo que en efecto se solicitó el 12 de octubre de 2021" "Sometido."

Informe Final Parte Apelada:

"Si con la venia de este Honorable Foro, nosotros solamente queremos dejar aclaro y para que se pueda entender para propósitos del récord, no es lo mismo tiempo cotizado, que tiempo trabajado y eso yo creo que es la incongruencia a la que se ha hecho referencia todo

este tiempo. El 24 de mayo de 2022, son idénticas básicamente para propósitos del tiempo cotizado para los Sistemas de Retiro, posteriormente se hace una solicitud de compra de tiempo, y en la certificación del 13 de junio de 2023, surge el tiempo claramente, según solicitado por la parte aplicado según el récord, según la información provista por el Departamento de Educación y según la información del sistema de Retiro para maestros, la del 13 de julio de 2023, que fue a petición de la propia parte y que se reafirma verdad, solicitud desde la reconsideración, surge claramente cuál es el balance al momento, cuanto a cotizado para propósitos del Sistema de Retiro para Maestro. Esto, va a ser incongruente con lo de mayo de 2021 porque ya se aplicó la compra de tiempo, que todavía no se había aplicado la compra del tiempo, pero ya se aplicó la compra del tiempo y este es el balance restante, por lo tanto, el tiempo cotizado es lo que surge de ahí. La evaluación del Sistema de retiro para Maestros es la correcta. Cualquier otro asunto de Plan de Ajuste para la Deuda, es de todos conocidos que esa información no la controla el Sistema de Retiro para Maestro, eso es un asunto de control de la Junta de Supervisión Fiscal y las notificaciones las hacia la Junta de Supervisión Fiscal a todos los participantes, por lo que no va a obrar en el expediente, lo cual tampoco es pertinente para propósitos de lo que estamos adjudicando, por lo que sometido por nuestra parte."

Luego de realizar estas determinaciones de hechos, desglosó toda la prueba documental que obraba del expediente y citó el derecho aplicable. Tomando en consideración todo lo antes mencionado, concluyó lo siguiente:

[E]stablecemos que en el caso de autos nos encontramos ante un beneficiario que presentó una solicitud de retiro ante el Sistema de Retiro para Maestros, el 12 de octubre de 2021. En la misma se acogió a la compra de tiempo según dispuesto en el Artículo 2.11 de la Ley 26-2017. En dicho momento el Sistema de Retiro para Maestros notificó a la Parte aquí Apelante que ostentaba un balance acumulado de 27 años, 0 meses, 2 semanas y 20 días de servicios cotizados. Es preciso señalar, que a partir de la presentación de la solicitud de retiro de la Parte Apelante y la vigencia del Plan de Ajuste de la Deuda transcurrieron cinco (5) meses, por tanto, el Sr. Maldonado cotizó al Sistema de Retiro luego de la presentación de su solicitud de retiro y al entrar en vigor el Plan de Ajuste un total de: 27 años, 5 meses, 2 semanas y .20 días de servicios cotizados. (Énfasis suplido). A partir del 15 de marzo de 2022, la Parte

Apelante dejó de cotizar para el Sistema de Retiro para Maestros.

La Parte Apelante solicitó al Departamento de Educación utilizar su balance de licencia de vacaciones para cotizar como tiempo trabajado, con el fin de completar los treinta (30) años de servicios. El Oficial de Nóminas del Departamento de Educación, Giovanni Suárez Fuentes certificó que el valor monetario de licencia de vacaciones de la parte apelante al 10 de junio de 2022 era de $7,223.34. Tomando en consideración que el sueldo de la parte apelante era de $3,611.67 y que el costo mensual de aportación de retiro basado en el sueldo del empleado era de $325.05, se computó como balance disponible acumulado por licencia de vacaciones era el equivalente a 1 año y 10 meses. Al llevar a cabo un cómputo matemático sencillo del tiempo cotizado de 27 años, 5 meses y 2 semanas más 1 año y 10 meses de la compra de tiempo, da un total de tiempo cotizado de 29 años, 3 meses, 2 semanas 0 días, 2:24 horas. Es decir, la Parte Apelante no completó los 30 años de servicio cotizados.

Si bien es cierto que la Parte Apelante trabajó para el Departamento de Educación 28 años, 8 meses, 2 semanas y 2 días, 1 también es cierto que dejó de cotizar a partir de la entrada en vigor del Plan de Ajuste de la Deuda.

[...]

A la luz de los hechos presentados, los testimonios vertidos en la Vista Administrativa en sus méritos y la información contenida en el expediente la Parte Apelante cotizó un total de 29 años, 3 meses, 2 semanas 0 días, 2:24 horas.14 Es decir, no completó los 30 años de servicio cotizados para obtener el monto mensual por concepto de pensión, aquí apelada.

De conformidad con la normativa aplicable al caso de autos, luego de un examen desapasionado y minucioso a la totalidad del expediente administrativo, somos del criterio de que no erró el Director Ejecutivo, el Sr. Maldonado no completó los treinta (30) años cotizados requeridos por la Ley Núm. 160-2013, que le permitía jubilarse con el requisito de los treinta (30) años y el 75% de los últimos treinta seis (36) salarios devengados, debido a que el cuadre de aportaciones fue computado hasta el 14 de marzo de 2022, habiendo entrado en vigor el Plan de ajuste de la Deuda el 15 de marzo de 2022.

Luego de realizar un minucioso e imparcial análisis de la evidencia contenida en el expediente administrativo, así como de las argumentaciones presentadas por las partes, en concordancia con las leyes, jurisprudencia y regulaciones citadas previamente, y teniendo en cuenta las Determinaciones de Hechos y las Conclusiones de Derecho previamente detallas, esta Junta de Retira Ordena CONFIRMAR la decisión tomada por la Junta de Retiro.

Inconforme con este dictamen, el 20 de marzo de 2024, el recurrente presentó una solicitud de reconsideración la cual no fue atendida por la Junta. Así pues, el 29 de abril de 2024, el señor Maldonado presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró la Junta de Retiro del Gobierno de Puerto Rico, al aplicar retroactivamente la Orden de Congelación de Aportaciones con relación a la implementación del Plan Fiscal de la Deuda, a la Solicitud de Retiro del recurrente, presentada con anterioridad a la vigencia del Plan de Ajuste de la Deuda, pues el recurrente al haber presentado su solicitud de retiro con anterioridad, ejerció su derecho e interés propietario protegido por la garantía constitucional contra el menoscabo de las obligaciones contractuales en aras de recibir derechos adquiridos bajo la Ley 160-2013.**

> **Erró la Junta de Retiro del Gobierno de Puerto Rico, al no aplicar la compra de tiempo conforme al Artículo 2.11 de la Ley 26 de 29 de abril de 2017 conocida como "Ley Cumplimiento con el Plan Fiscal" a la certificación del Departamento de Educación del 24 de mayo de 2022 que certifica que el recurrente acumuló 28 años, 8 meses, 2 semanas y 2 días conforme a la Ley 160-2013 para completar los 30 años de servicio para el 75% de pensión de retiro según el salario más alto devengado.**

> **Erró la Junta de Retiro del Gobierno de Puerto Rico, al no revisar el cálculo de la pensión del recurrente conforme la Ley 160-2013 concediendo el 75% de pensión por retiro del salario más alto devengado por el recurrente y el correspondiente retroactivo al 10 de junio de 2022.**

Atendido el recurso, el 30 de abril de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 20 de mayo de 2024 para presentar su alegato en oposición. Oportunamente, la Junta presentó un Alegato de la Parte Recurrida y en este negó que la Junta cometiera los errores que el señor Maldonado le imputo. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

II.

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro

de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Caldero López,* 201 DPR 26, 35 (2018). Al efectuar tal encomienda, **debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas".** (Énfasis suplido) *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que **existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas.** (Énfasis suplido). *Rolón Martínez v. Caldero López*, supra, pág. 35. **Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados.** (Énfasis suplido) Íd.

Así, **el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección.** (Énfasis suplido) *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág.128. Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

**De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa.** (Énfasis suplido) Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos

sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

III.

En su primer señalamiento de error, en síntesis, el señor Maldonado argumentó que la Junta erró al aplicar retroactivamente la orden de congelación de aportaciones con relación a la implementación del plan de ajuste de la deuda a su solicitud de retiro ya que esta se presentó con anterioridad a la vigencia de dicho plan de ajuste. Por otro lado, en su segundo señalamiento de error sostuvo que la Junta erró al no aplicar la compra de tiempo conforme lo dispone el Art. 2.11 de la Ley Núm. 26-2017, *supra*, a la certificación del Departamento de Educación del 24 de mayo de 2022 que disponía que este había acumulado 28 años, 8 meses, 2 semanas y 2 días. Alegó que, si se hubiese aplicado la compra de tiempo al término antes mencionado, podía completar los 30 años de servicio para el 75% de pensión de retiro según el salario más alto devengado conforme lo dispone la Ley Núm. 160-2013, *supra*. Por último, en su tercer señalamiento de error, indicó que la Junta erró al no revisar el cálculo de la pensión conforme a la Ley Núm. 160-2013, *supra* y el correspondiente retroactivo al 10 de junio de 2022.

Discutiremos los tres señalamientos de error en conjunto por estar íntimamente relacionados entre sí. De entrada, cabe precisar que, este foro judicial tiene el deber de otorgarle amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág. 126. Ello, ya que estas poseen la experiencia y pericia para atender y resolver los asuntos que le han sido delegados. *Rolón Martínez v. Caldero López,* supra, pág. 35. Consecuentemente, al realizar nuestra función revisora, nos

debemos limitar a evaluar si la agencia administrativa: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesiono derechos constitucionales. *Torres Rivera v. Policía de PR*, supra, págs. 627-628.

En el caso de autos, el 12 de octubre de 2021, la parte recurrente presentó una *Solicitud de Retiro* en la cual indicó que deseaba que se calculara su pensión a base de su edad y años de servicio con fecha efectiva al 10 de junio de 2022. Además, en esta se acogió a las disposiciones del Art. 2.11 de la Ley Núm. 26-2017, *supra*, con el fin de completar los años necesarios para recibir el beneficio de la pensión con la cantidad máxima según los balances de vacaciones.

Ante ello, el 11 de febrero de 2022, la parte recurrente presentó una *Solicitud de Compra de Tiempo* y en respuesta a ello, el 18 de abril de 2022, la Junta emitió una *Certificación de Tiempo y Valor Monetario*. En esta se le informó al señor Maldonado que, considerando como fecha tentativa de retiro el 10 de junio de 2022 y el tiempo acreditado hasta el 14 de marzo de 2022, fecha en la que entró en vigor el Plan de Ajuste de la Deuda, este último tenía acumulados 27 años, 5 meses, y 2 semanas por concepto de tiempo cotizado. En esta certificación también se calculó el tiempo cotizado antes mencionado con el tiempo disponible según el balance acumulado de licencia de vacaciones y esto resultó en un total de 29 días, 3 meses, 2 semanas y 2:24 horas cotizadas.

Posteriormente, el 24 de mayo de 2022, tanto la Junta como el Departamento de Educación emitieron una certificación. La certificación que emitió la Junta indicaba que el tiempo cotizado del señor Maldonado sin el balance de la compra de licencia de vacaciones era de 27 años, 0 meses, 2 semanas, y 40 días. Por otra parte, la certificación del Departamento de Educación indicaba que el recurrente había prestado servicios para el Departamento de

Educación por un periodo de 28 años, 8 meses, 2 semanas y 2 días. Al no reflejarse el balance del tiempo comprado de la licencia de vacaciones en las certificaciones antes descritas, el 6 de junio de 2023, el señor Maldonado presentó una reclamación ante la Junta solicitando que se le aplicara el tiempo comprado para completar los 30 años de servicio y se revisara el cálculo de la pensión de retiro concediendo el 75% en lo sucesivo y según el salario más alto devengado y el retroactivo correspondiente al 10 de junio de 2022.

En respuesta a esta reclamación, el 13 de junio de 2023, la Junta le envió una misiva al señor Maldonado en la cual reiteró que el balance para el cómputo de la pensión era un total de 29 días, 3 meses, 2 semanas y 2:24 horas luego de aplicarle el balance de la compra de licencia de vacaciones al cuadre de aportaciones que se computó hasta el 14 de marzo de 2022. Explicó que el cuadre de aportaciones se hizo hasta la fecha antes señalada ya que, en esa fecha, quedaron congeladas las aportaciones del Sistema de Retiro para Maestros mediante la orden que emitió la Honorable Laura Taylor Swain, jueza a cargo de la implementación del Plan de Ajuste de la Deuda de Puerto Rico. Indicó que antes de esta congelación, los participantes cotizaban bajo un Plan de Beneficios Definidos, pero que ahora cotizaban bajo un Plan de Aportaciones Definidas. Además, aclaró que los años de experiencia laboral no eran iguales a los años cotizados. Expresó que el tiempo cotizado era lo que tanto el patrono como el empleado pagaban al sistema de retiro para recibir una pensión. Así pues, indicó que debido a ello era que las certificaciones que se emitieron el 24 de mayo de 2022 contenían diferencias en tiempo.

El recurrente impugnó lo antes mencionado mediante una *Apelación* ante la Junta e incluso se celebró una vista administrativa en sus méritos para atender los argumentos del señor Maldonado. Cabe mencionar que, en esta vista, la Sra. Ileana Ramos Reyes,

Directora de Servicios de Retiro, testificó sobre el procedimiento que se lleva a cabo para calcular la pensión. Luego de evaluar la prueba testifical y documental presentada por las partes y el derecho aplicable, la Junta dictó la *Resolución* recurrida y en esta, confirmó lo expresado por la Junta en la misiva del 13 de junio de 2023.

Luego de realizar nuestra función revisora tomando en cuenta los criterios esbozados en *Torres Rivera v. Policía de PR*, supra, págs. 627-628 no encontramos que la agencia administrativa haya sido arbitraria o haya tomado una determinación irrazonable o ilegal. Tampoco consideramos que ésta haya cometido un error en la interpretación o la aplicación del derecho sustantivo. La parte recurrente tampoco presentó evidencia suficiente que rebatiera la presunción de legalidad y corrección de la determinación de la Junta. En vista de ello, tenemos el deber de validar la determinación realizada por la Junta. Consecuentemente, los señalamientos de error no se cometieron.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones